UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ x
CARLA KARLEN,                                              :
GERARD KARLEN                                              :
                                                           :
                        Plaintiffs,                        :    **MEMORANDUM &**
                                                           :    **ORDER ON MOTION TO**
         -against-                                         :    **DISMISS**
                                                           :
WELLS FARGO BANK, N.A., et. al.,                           :    3:22-CV-00906 (VDO)
                                                           :
                        Defendants.                        x
------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

Plaintiffs Carla and Gerard Karlen brought this action, one in a series, against Defendants Wells Fargo Bank, N.A. and the Wells Fargo Mortgage-Backed Securities 2007-2 Trust (collectively, "Wells Fargo") after the foreclosure of their home. In this particular action, the Karlens allege violations of the Fair Housing Act ("FHA"), Title VII, and the Truth in Lending Act ("TILA") for issues related to the ownership status of their mortgage note ("the Note") and the prosecution of the foreclosure. Wells Fargo moved to dismiss their claims.

For the reasons stated below, Wells Fargo's motion is **granted** and the Karlens' claims are **dismissed**.

**I.    BACKGROUND**

   **A.    Factual Background**

The Karlens are a couple living in Connecticut. (Compl., Doc. No. 1 at ¶¶1-2) Carla Karlen is Black and Gerard Karlen is White. *Id*. at ¶24. The Karlens' home and Note were transferred from Wall Street Mortgage Bankers (their original lender) to Wells Fargo in 2006. *Id*. at ¶64. The Karlens did not pay their loan, so Wells Fargo, through a Trustee, filed a foreclosure action in Connecticut state court in 2014. (Def. Mot., Doc. No. 57-1 at 3.) Wells

Fargo then reacquired the loan and took over the foreclosure in 2016. *Id*. at 4. After a protracted and contentious discovery, Wells Fargo won summary judgment against the Karlens in 2017. *Id*. The Karlens appealed and the Connecticut Appeals Court reversed and remanded on a narrow issue not relevant here. *Id*. Wells Fargo again won summary judgment after further discovery in 2021. *Id*. The Karlens disputed the validity and transference of the Note owned by Wells Fargo, but the Connecticut court found it valid. *Id*. at 5; *Infra* at IIIB. When the Karlens asked for reconsideration, the Connecticut court ruled against them again, also in 2021. (Def. Mot. At 5.)

### B. Procedural History

After the litigation in Connecticut state court, the Karlens filed this action in California state court in 2021. *Id*. at 5-6. That court dismissed the case and directed them to file in Connecticut. *Id*. at 6. Gerard Karlen then filed a similar claim alone in Maryland state court. *Id*. That court dismissed the case with prejudice in 2022. *Id*. The Karlens then sued Wells Fargo in the Northern District of California, which transferred the case to this District. *Id*. at 6-7; (Doc. No. 38.)

## II. LEGAL STANDARD

The standard for a motion to dismiss comes from *Twombly* and *Iqbal*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court thus takes all factual allegations as true, construing them in the light most favorable to the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

### III. DISCUSSION

The Karlens' first three counts allege violations of the FHA through a variety of means designed, in their view, to advance a conspiracy to prevent them from selling their home. They further allege, in Count Four, that Wells Fargo acted with racial animus and malicious behavior during the conduct of the foreclosure action and all subsequent litigation. But the Karlens fail to allege any of these claims with the specificity required by *Twombly* and *Iqbal*, or by the FHA. Even if they did, Connecticut's longstanding litigation privilege doctrine bars claims related to the conduct of legal proceedings.

In Counts Five, Six, and Seven, the Karlens claim violations of TILA. Each of these claims is time-barred. And if the claims were timely, the TILA claims in Counts Five and Seven regarding the Karlens' Note have been litigated and decided. Those claims are thus barred by issue preclusion. Count Six, moreover, does not meet TILA's more specific pleading requirements.

#### A. Counts 1-4: The FHA and Subsequent Litigation

##### 1. Failure to state a claim

The Karlens allege that Wells Fargo violated Fair Housing Act through racially-motivated illegal surveillance, intimidation, communication with brokers, interference with maintenance, withholding mortgage statements, and ultimately hiring counsel. (Compl. at ¶¶18, 29-32, 35.) None of these claims, however, are pleaded with even a modicum of specificity.

In Count One, for example, the Karlens allege "discriminatory housing practices" in violation of *nineteen* sections of the FHA. None of those sections are listed, let alone alleged

3

with facts tied to any legal duties.[1] Moreover, where allegations are made, they are conclusory. In alleging racial animus, the Karlens state only that "Wells [Fargo's] actions were taken against Plaintiffs due to the race of deed holder Carla Karlen, who is Black American." (*Id.* at 24.) This kind of statement, devoid of any disparate impact analysis, citations to case law, or even examples demonstrating *why* Wells Fargo's actions might have shown some form of discriminatory intent are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. The fact of Mrs. Karlen's race is not a basis alone to think Wells Fargo acted with animus toward her or Mr. Karlen, and that is the only basis they give this Court.

Counts Two, Three, and Four are no different. In Count Two, the Karlens state that Wells Fargo "engaged in unlawful and obstructive practices in the selling, brokering and appraising the premises in violation of 24 C.F.R. §135." (Compl. at 30.) They follow up with "[a]s a result of such actions, Plaintiffs have been damaged by an incalculable amount." (*Id.* at 31.) Plaintiffs' logic is circular and lacks legal analysis and factual basis. And in Counts Three and Four, where the Plaintiffs include more "facts," they tie none of these conclusory statements to any violation of the law or allege any real damage. In Count Four, no law is mentioned at all.

Though *pro se* plaintiffs are afforded latitude in pleading,[2] *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013), the law requires more of litigants than simple invocations of full statutes without facts. More must be alleged, and the Karlens' last-ditch

---

[1] Take 42 U.S.C. § 3612, for example, which the Karlens cite in Count One. (*Id.* at 18) That subsection provides the substance and procedure for an FHA violation to be adjudicated by the Secretary of Housing and Urban Development. How the Karlens think Wells Fargo violated this section is not made at all clear to the Court.

[2] Note, however, that Gerard Karlen is an attorney.

attempt to add more detail in their responsive pleadings (Pls. Opp., Doc. No. 58, at 13), still falls short of federal pleading requirements. Fed. R. Civ. P. 8(b); *Iqbal*, 556 U.S. at 678.

### 2. Litigation privilege

Even if the Karlens had met the requirements of *Twombly* and *Iqbal*, Connecticut's litigation privilege bar would prevent the claims found in Counts One through Four, as well as Counts Five and Seven. Each of these claims stems from the Karlens' assertions of impropriety during the course of the foreclosure or the subsequent decade of litigation. But Connecticut courts provide immunity to attorney conduct during the course of litigation, so long as that conduct does not subvert the underlying purposes of the judicial process. *MacDermid, Inc. v. Leonetti*, 79 A.3d 60, 68-69 (Conn. 2013); *Simms v. Seaman*, 69 A.3d 880, 890 (Conn. 2013).

Counts One through Four, Five, and Seven all relate to the "conspiracy" the Karlens allege Wells Fargo engaged in to prevent them from, variously, selling their home, keeping their home, or knowing the owner of their home's Note. (Compl. at ¶¶18, 29-32, 35, 58, 60, 89.) The problem, however, is that that "conspiracy"—or, more accurately, that series of lawsuits followed by the initial foreclosure—is legal conduct covered by litigation privilege. And just as the Karlens fail to allege anything amounting to a violation of the FHA, they fail to allege anything close to the abuse of process required to clear the litigation privilege bar. *Simms*, 69 A.3d at 890-91. Different deposition lengths, tough questions, and invocations of extra-legal issues are not outside the norm for litigation and are far from abuse of process. (Pls. Opp. at 9.) The same is true for "providing unsigned transcripts," which the Karlens do not allege is a violation of the law. *Id*. Litigation privilege is thus sufficient to dismiss Counts One through Four, Five, and Seven.

### B. Counts 5-7: The TILA

#### 1. Time bars and TILA pleading

Each of the claims in Counts Five, Six, and Seven falls outside the statute of limitations. Claims Five and Seven, related to the alleged improper notice of transferring the Note, recall acts from 2007 and 2019. (Compl. at ¶¶67, 75.) The statute of limitations for such a claim is one year. 15 U.S.C. § 1640(e). The Karlens filed this case in 2022, two years after the statute of limitations ran on the alleged 2019 transfer. In response, the Karlens argue that such a reading of the statute of limitations would render it meaningless, and that lenders would run the clock and hide their misdeeds. (Pls. Opp. at 11.) Their issue is not with Wells Fargo but Congress, who made the text of the statute unambiguous: claims are available "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Moreover, even if the Court applied equitable principles and started the clock when the Karlens became aware of the alleged violations, their litigation history reveals their knowledge of the transfer before the statute of limitations ran out. *See* I.B., *supra*.

Count Six, relating to Wells Fargo's alleged failure to provide statements, is also untimely. The Karlens claim that Wells Fargo did not provide them with the required periodic statements under TILA for "at least [six] years." (Compl. at ¶82.) If this is true, the only violations that would be actionable would be those from the last year, starting from the time of filing, not the last six. 15 U.S.C. § 1640(e). But the Karlens fail to allege with any specificity when these violations occurred, or even whether the past six years includes specific violations within the last year. The Court declines to speculate on their behalf.

If the Karlens had given a specific date or a smaller window as to when the last violation occurred, TILA would require them to then plead specific damages for that violation. 15 U.S.C.

§ 1640(a)(1). They did not do so, opting instead to "seek monetary damages in accordance with [the] statute." (Compl. at ¶82.) That is not enough, as TILA requires a plaintiff to allege damages with specificity, not circularity. For that reason, Count Six is both time-barred and fails under the statute it stands on.

### 2. Issue Preclusion

The Karlens take the most issue with the existence, ownership, and enforcement of their mortgage note. (Compl., *passim*.) Issues with their Note ultimately relate to their ability to fight foreclosure through the various means they've employed since 2014. But those issues have been decided. (Def. Mot. at 33.) The Note belongs to Wells Fargo and issues related to it, particularly those raised in Counts Five and Seven, are barred by issue preclusion.

Issue preclusion, or collateral estoppel, is a rule of law that prevents courts from rehearing issues actually litigated and decided by another competent tribunal. An issue is precluded if: (1) it was raised in a previous proceeding; (2) it was actually litigated and decided during that proceeding; (3) the party raising it had a "full and fair opportunity" to litigate it; and (4) its resolution was "necessary to support a valid and final judgment on the merits." *Central Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991).

Count Five related to the ownership and transfer of the Note between mortgagors. (Compl. at ¶¶65-67, 70.) Count Seven does as well, alleging a conspiracy to hide the Note's ownership from the Karlens. (Compl. at ¶¶89-90.) The Connecticut Superior Court decided these exact issues in ruling related to the original foreclosure. (Def. Mot. at 33-34.) In that case, the Court decided that the Note's series of transfers, ending with Wells Fargo, was valid and that Wells Fargo ultimately had the power to enforce the Note. (*Id.* at 33-34, 35.) The

Karlens had a fair hearing on summary judgment motions during that case, and the resolution of the issue was essential to support a valid and final judgment. The Karlens thus cannot relitigate the issues they raise regarding the Note.

### C.     Leave to Amend

District courts often give a plaintiff leave to file an amended complaint when granting a motion to dismiss. *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003). This is particularly true for *pro se* litigants, who may find it difficult at first to meet the strict requirements of federal court. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). But courts need not grant leave when doing so is likely to be unproductive or futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). A case in which a complaint's problems are substantive, not stylistic, is unlikely to be viable even if that complaint is amended. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). This is such a case.

The Karlens have litigated two or three times over many of the claims present here. And each claim raised in this case fails two or three times over.[3] The court further notes that Mr. Karlen is himself an attorney, obviating the need for the full measure of judicial grace usually afforded self-represented litigants. Given these considerations, it would be futile for the Karlens to amend their pleadings and try, yet again, to reanimate their long-dead claims.

Accordingly, the Court declines to grant the Karlens leave to amend.

---

[3] To be clear, Counts One, Two, Three, and Four fail due to litigation privilege and pleading requirements. Counts Five and Seven are barred by litigation privilege, issue preclusion, and the statute of limitations. Count Six fails due to the statute of limitations and pleading requirements.

## IV. **CONCLUSION**

For the reasons stated above, Wells Fargo's motion to dismiss (Doc. No. 57) is **granted**.

The Clerk is directed to close the case.

**SO ORDERED.**

Hartford, Connecticut
May 8, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge